# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                           No. CR 20-1946 JB

ROBERT C. MAESTAS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objections to the Pre-Sentence Report and Sentencing Memorandum, filed June 14, 2021 (Doc. 37)("Objections"). The primary issue is whether the Court properly may apply both (a) an upward departure pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 5K2.6 for using or possessing a dangerous weapon, and (b) U.S.S.G § 2K2.1(b)(6)(B)'s 4-level sentencing enhancement for using a firearm in connection with another felony offense, because, as Defendant Robert Maestas argues, applying both would require "double counting" an incident where Defendant Robert Maestas fired a gun at his ex-girlfriend's house. The Court concludes that it is not precluded from applying both U.S.S.G.'s § 5K2.6's upward departure and U.S.S.G § 2K2.1(b)(6)(B)'s 4-level enhancement, because (i) the two provisions increase a defendant's punishment on account of different kinds of harm; and (ii) U.S.S.G.'s § 5K2.6 is not based on conduct already included in the base offense. The Court will, therefore, overrule the Objections.

## FINDINGS OF FACT

The Court takes its facts from the United States Probation Office's ("USPO") Presentence Investigation Report, filed May 17, 2021 (Doc. 35)("PSR"), the Objections, and the Addendum to the Presentence Report, filed July 7, 2021 (Doc. 40)("Addendum."). The Court makes its findings

of fact by a preponderance of the evidence.  See United States v. Williams, No. CR. 17-2556 JB, 2020 WL 4016108, at *6 (D.N.M. July 16, 2020)(Browning, J.)(citing United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)).  Accord United States v. Zapata, 546 F.3d 1179, 1192 (10th Cir. 2008).  The Court may rely on hearsay if the hearsay is reliable.  See United States v. Banda, 168 F. App'x 284, 289 (10th Cir. 2006)(unpublished)("[T]here is no prohibition on considering hearsay testimony at sentencing, provided it bears indicia of reliability.").[1]  The evidence and information upon which the Court relies must have sufficient indicia of reliability.  See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

     1.     On September 1, 2020, Rosalee Mares was at work when she "heard excessive honking outside," and saw her ex-boyfriend, Maestas, "driving slowly with his windows rolled down."  PSR ¶ 9, at 4.

---

[1] United States v. Banda is an unpublished opinion, but the Court can rely on a United States Court of Appeals for the Tenth Circuit unpublished opinion from the to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent. . . .  And we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Banda, 168 F. App'x 284 (10th Cir. 2006)(unpublished), and all other unpublished cases cited herein have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

2.      Maestas had not lived with Mares since January, 2020.  See PSR ¶ 10, at 5.

3.      Maestas was upset, because he believed Mares was cheating on him.  See PSR ¶ 12, at 5.

4.      Maestas called Mares several times and left "multiple voicemails" on her cellular telephone.  PSR ¶ 9, at 4.

5.      Mares had applied for a restraining order against Maestas on August 28, 2020, because Maestas was harassing her by showing up at her place of work and frequently calling her, but it had not yet been served.  See PSR ¶¶ 9-10, at 4-5.

6.      Maestas has at least two prior felony convictions, for forgery and possession of a controlled substance.  See PSR ¶ 13, at 5.

7.      Mares blocked Maestas' number, but he was still able to leave voicemails.  See PSR ¶ 10, at 5.

8.      Mares called the police, and one Albuquerque Police Department ("APD") officer was dispatched.  See PSR ¶ 9, at 4.

9.      Maestas left Mares two voicemails on September 3, 2020, one of which said that Mares should be prepared for Maestas' funeral and to come to Maestas' apartment, where he had a gun.  See Addendum at 1; PSR ¶ 10, at 5.

10.     On September 3, 2020, Maestas drove to Mares' house "to see if she was cheating on him."  PSR ¶ 12, at 5.

11.     Mares was in her house with her son, E.M., when Maestas drove by her house and fired a single round of ammunition at her house.  See PSR ¶ 10, at 5.

12.     Mares heard the gun shot and the bullet's impact in her living room.  See PSR ¶ 10, at 5.

13.     One of Mares' neighbors recognized Maestas and his vehicle, because Maestas used to live with Mares, and witnesses Maestas fire the shot.  See PSR ¶ 11, at 5.

14.     A doorbell camera captured video of Maestas shooting at Mares' house.  See PSR ¶ 11, at 5.

15.     Mares went to the bathroom to call the police and wait for officers to arrive.  See PSR ¶ 10, at 5.

16.     Maestas' gunshot damaged the front of Mares' house by creating a "circular defect" in a "stucco overhang" of the house's patio.  PSR ¶ 10, at 5.

17.     There was a bullet fragment underneath the patio of Mares' house.  See PSR ¶ 10, at 5.

18.     Neither Mares nor E.M. was injured.  See PSR ¶ 10, at 5.

19.     APD officers could not find Maestas in the area.  See PSR ¶ 11, at 5.

20.     On September 4, 2020, Maestas was arrested at his apartment.  See PSR ¶ 12, at 5.

21.     Maestas denied going to Mares' house on the day of the gunshot, but admitted to leaving her two voicemails stating that she should "come over and . . . prepare for a funeral."  PSR ¶ 12, at 5.

22.     After APD officers told Maestas that there was video footage of him shooting at Mares' house, Maestas admitted to driving by Mares' house and shooting at it with a 9mm handgun he had in his apartment.  See PSR ¶ 12, at 5.

23.     Maestas "did not provide a reason for why he shot at the house."  PSR ¶ 12, at 5

24.     Maestas had both a Taurus, model G2C, 9mm, serial no. TLY91611 and a magazine loaded with 10 rounds of 9mm ammunition on the couch in his apartment.  See PSR ¶ 12, at 5.

25.     The firearm was not stolen.  See PSR ¶ 12, at 5.

- 4 -

26.     The firearm was manufactured in Brazil; the ammunition was manufactured in Missouri, California, Kentucky, or Arkansas.  See PSR ¶ 13, at 5.

27.     There were two 9mm shell casings in Maestas's vehicle on September 10, 2020. See PSR ¶ 12, at 5.

## PROCEDURAL BACKGROUND

On March 18, 2021, Maestas pled to one count of being a felon-in-possession, in violation of 18 U.S.C. §§ 922(g)(1) and 924.  See Plea Agreement, filed March 22, 2021 (Doc. 32)("Plea Agreement").   In the PSR, the USPO calculates Maestas' total-offense level to be 15, which includes a base-offense level of 14, U.S.S.G.'s § 2K2.1(b)(6)(B)'s 4-level sentencing enhancement for using a firearm in connection with another felony offense, and U.S.S.G.'s § 3E1.1's 3-level reduction for acceptance of responsibility.  See PSR ¶¶ 19-28, at 6-7.   In addition, the USPO recommends an upward departure pursuant to U.S.S.G. § 5K2.6, because Maestas used or possessed a weapon during the commission of the offense.  See PSR ¶¶ 81-82, at 20-21.

Maestas objects to the application of both U.S.S.G.'s § 2K2.1(b)(6)(B)'s 4-level sentencing enhancement and U.S.S.G. § 5K2.6.  See Objections at 3-5.  Maestas argues that he is "already assessed" a 4-level sentencing enhancement under U.S.S.G.'s § 2K2.1(b)(6)(B), so he cannot also receive an upward departure under U.S.S.G. § 5K2.6.  See Objections at 4-5.  According to Maestas, imposing both U.S.S.G.'s § 2K2.1(b)(6)(B) and U.S.S.G. § 5K2.6 "based on the same facts, shooting into a dwelling . . . , would be prohibited 'double counting.'"  Objections at 4-5 (no citation for quotation).  Maestas suggests that the USPO is "attempting to use the same conduct on the part of the defendant, shooting at a dwelling from a motor vehicle, to support separate increases under separate enhancement provisions -- which necessarily overlap, are indistinct, and serve identical purposes, punishing risk of serious bodily injury or death."  Objections at 5.

- 5 -

The United States responds to Maestas' Objection.  See United States' Sentencing Memorandum, filed July 7, 2021 (Doc. 39)("Response").   The United States "does not recommend" applying U.S.S.G. § 5K2.6's upward departure, because it is "satisfied that a guideline sentence is appropriate." Response at 1.  The United States offers no other reason that the Court should not apply both U.S.S.G. § 5K2.6's upward departure and U.S.S.G.'s § 2K2.1(b)(6)(B)'s 4-level enhancement.  See Response at 1-7.

The USPO maintains that both U.S.S.G. § 5K2.6's upward departure and U.S.S.G.'s § 2K2.1(b)(6)(B)'s 4-level enhancement should apply.  See Addendum at 1-2.  In the Addendum, the USPO states that, because Maestas possessed a firearm "during the commission of the offense," -- here, felon-in-possession, in violation of 18 U.S.C. §§ 922(g)(1) and 924 -- he is eligible for U.S.S.G. § 5K2.6's upward departure.  See Addendum at 1-2 (quoting U.S.S.G. § 5K2.6).   In addition, the USPO notes that Maestas possessed a firearm "in connection with another felony offense" -- here, the driving by and shooting at Mares' house -- and is eligible for U.S.S.G.'s § 2K2.1(b)(6)(B)'s 4-level enhancement as a result.  Addendum at 1; PSR ¶ 20, at 6.

## RELEVANT LAW REGARDING THE GUIDELINES

Section 2K2.1(b)(6)(B) provides for a 4-level enhancement "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B). "[A]nother felony offense" "means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."  U.S.S.G. § 2K2.1 cmt. 14(C).  See United States v. Gross, No. CR 16-0454 JB, 2016 WL 9021829, at *15

(D.N.M. Dec. 16, 2016)(Browning, J.)("An enhancement under § 2K2.1(b)(6) may be applied even though the felony in connection with which the firearm is possessed was not an offense for which the defendant was convicted.")(citing United States v. Gambino-Zavala, 539 F.3d 1221, 1230 n.3 (10th Cir. 2008)).  Application note 14(A) to U.S.S.G. § 2K2.1 specifies that the use or possession is "in connection with" another felony offense "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense."  U.S.S.G. § 2K2.1 cmt. 14(A). The Tenth Circuit has explained: "The plain and commonly understood meaning of 'facilitate' is to make easier."  United States v. Marrufo, 661 F.3d 1204, 1207 (10th Cir. 2011).  See United States v. Serna, 405 F. Supp. 3d 1107, 1110 (D.N.M. 2019)(Browning, J.).

An enhancement under U.S.S.G. § 2K2.1(b)(6) may be applied even though the felony in connection with which the firearm is possessed was not an offense for which the defendant was convicted.  See United States v. Gambino-Zavala, 539 F.3d at 1230 n. 3.  In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that, even after United States v. Booker, 543 U.S. 220 (2005), as long as the guidelines are considered advisory, facts relevant to sentencing still need be proved only by a preponderance of the evidence.  See United States v. Magallanez, 408 F.3d at 684-85.  See also United States v. Dalton, 409 F.3d 1247, 1252 (10th Cir. 2005)("[United States v.]Booker therefore does not render judicial factfinding by a preponderance of the evidence per se unconstitutional.").

The 4-level enhancement has four distinct elements, and "[t]he United States must prove that the defendant: (i) used or possessed; (ii) any firearm or ammunition; (iii) in connection with; (iv) another felony offense."  United States v. Kepler, No. CR. 11-1946 JB, 2012 WL 592422, at *5 (D.N.M. Feb. 14, 2012)(Browning, J.)(citing U.S.S.G. § 2K2.1(b)(6)).  In United States v. Kepler, the United States and the defendant stipulated that § 2K2.1(b)(6)'s 4-level enhancement

did not apply, and the Court accepted the stipulation, because there was a lack of evidence regarding whether the defendant or some other occupant in the house owned the locked box that contained methamphetamine and a handgun.  See United States v. Kepler, 2012 WL 592422, at *6.  The Court explained:

> Given that the Court has no ability to gather or present evidence to support a sentencing enhancement, the Court is dependent in many ways on the United States to assess the strength of its arguments and evaluate whether it can prove that a particular enhancement applies. While it is possible that the methamphetamine is attributable to Kepler, the evidence before the Court does not support a factual finding to that effect by a preponderance of the evidence. Without proof that Kepler committed another felony offense, the United States cannot establish that an enhancement under U.S.S.G. § 2K2.1(b)(6) applies.

United States v. Kepler, 2012 WL 592422, at *6.  See United States v. Pacheco, No. CR 13-2643 JB, 2014 WL 3421063, at *7 (D.N.M. July 8, 2014)(Browning, J.).

## ANALYSIS

The Court concludes that: (i) applying both U.S.S.G. § 5K2.6's upward departure and U.S.S.G.'s § 2K2.1(b)(6)(B)'s 4-level enhancement is not impermissible double counting, because they are based on different conduct; and (ii) it may apply U.S.S.G. § 5K2.6's upward departure, because, here, it is based on different conduct than the base offense.  First, "[i]mpermissible double counting or impermissible cumulative sentencing occurs when the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes."  United States v. Flinn, 18 F.3d 826, 829 (10th Cir. 1994).  Second, a court cannot apply properly "multiple punishments for one offense unless [Congress] clearly expresses an intent to do so."  United States v. Werlinger, 894 F.2d 1015, 1017 (8th Cir. 1990).  See United States v. DeLeon, 437 F. Supp. 955, 1023 (D.N.M. 2020)(Browning, J.)("Moreover, an 'upward departure cannot be based upon conduct included within [the] base offense level.'")(quoting United States v. Flinn, 18 F.3d at 829).

First, the USPO's application of U.S.S.G. § 5K2.6's upward departure and its recommendation for U.S.S.G.'s § 2K2.1(b)(6)(B)'s 4-level enhancement are based on different conduct.  See PSR ¶ 6, at 6; Addendum at 1-2.  "Double counting occurs when the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are identical, and serve identical purposes."  United States v. Reyes Pena, 261 F.3d 1204, 1209 (10th Cir. 2000).  To constitute double counting, "all three criteria must be satisfied."  United States v. Rojas, 531 F.3d 1203, 1208 (10th Cir. 2008).  In other words, a court "may punish the same act 'if the enhancements bear on conceptually separate notions relating to sentencing.'"  United States v. Rojas, 531 F.3d at 1208 (quoting United States v. Reyes Pena, 261 F.3d at 1209).  The USPO recommends applying U.S.S.G.'s § 2K2.1(b)(6)(B)'s 4-level increase, because Maestas used and possessed a firearm in connection with another felony offense, namely shooting at Mares' house on September 3, 2020.  See PSR ¶ 6, at 6; Addendum at 1-2.  In addition, the USPO recommends U.S.S.G. § 5K2.6's upward departure, because Maestas "used or possessed" a "weapon or dangerous instrumentality" "in the commission of the offense."  Addendum at 2 (quoting U.S.S.G. § 5K2.6).

Here, U.S.S.G.'s § 2K2.1(b)(6)(B) and U.S.S.G. § 5K2.6 do not overlap.  U.S.S.G.'s § 2K2.1(b)(6)(B)'s 4-level increase applies when the firearm "facilitated . . . another felony offense."  U.S.S.G. § 2K2.1 cmt. 14(A).  See United States v. Gross 2016 WL 9021829, at *15.  In this case, the other felony offense arises out of Maestas shooting at Mares' house on September 3, 2020.  See PSR ¶ 6, at 6; Addendum at 1-2.  By contrast, U.S.S.G. § 5K2.6 applies "[i]f a weapon . . . was used or possessed in the commission of the offense."  U.S.S.G. § 5K2.6.  The offense for U.S.S.G. § 5K2.6's purpose is felon-in-possession and not the drive-by shooting.  See Plea Agreement at 2.  Here, U.S.S.G.'s § 2K2.1(b)(6)(B) and U.S.S.G. § 5K2.6 deal with different

"kind[s] of harm." United States v. Peeples, 879 F.3d 282, 288 (8th Cir. 2018). U.S.S.G. § 2K2.1(b)(6)(B) deals with an addition offense for which Maestas was not convicted -- shooting at a house. See PSR ¶ 6, at 6; id. ¶¶ 31-33, at 7-8; United States v. Gambino-Zavala, 539 F.3d at 1230 n. 3. U.S.S.G. § 5K2.6 deals with the underlying offense of possession of a firearm. See U.S.S.G. § 5K2.6. The Court concludes, therefore, that applying both U.S.S.G.'s § 2K2.1(b)(6)(B) and U.S.S.G. § 5K2.6 is not "double counting," because they do not overlap, are distinct, and serve different purposes. United States v. Reyes Pena, 261 F.3d 1204, 1209 (10th Cir. 2000).

Second, in this case, applying U.S.S.G. § 5K2.6's upward departure is not based upon conduct already included in Maestas' base offense. The Court is, therefore, not precluded from applying an upward departure under U.S.S.G. § 5K2.6. The Court can apply an upward departure only if it is not "based upon conduct included within [the] base offense level." United States v. Flinn, 18 F.3d at 829. Maestas plead to a violation of 18 U.S.C. §§ 922(g)(1) and 924, see Plea Agreement at 2, which prohibit someone convicted of a felony -- who knows about the felony conviction -- from knowingly possessing a firearm that has traveled in interstate commerce, see 18 U.S.C. §§ 922(g)(1), 924. U.S.S.G. § 5K2.6 authorizes a sentence "above the authorized guideline range" if "a weapon or dangerous instrumentality was used or possessed in the commission of the offense." U.S.S.G. § 5K2.6. If Maestas had not used the weapon, then U.S.S.G. § 5K2.6's upward departure would be based on the same conduct as 18 U.S.C. §§ 922(g)(1) and 924, because someone cannot possess a firearm without possessing a firearm. An upward departure under U.S.S.G. § 5K2.6, therefore, is not warranted for every violation of 18 U.S.C. §§ 922(g)(1) and 924. In this case, however, the USPO recommends U.S.S.G. § 5K2.6's upward departure, because Maestas "did in fact discharge a firearm in Rosalee Mares' residence while she and her son [E.M.] were inside of the house," which endangered their lives. Addendum at 1.

The base-offense level for a violation of 18 U.S.C. § 922(g)(1) is 14.  See U.S.S.G. § 2K2.1(a)(6).  The base-offense level accounts "for the harm caused by" Maestas's "possession of a firearm, [but does not] . . . account for the harm cause by" Maestas's "discharging a firearm" at an occupied house.  United States v. Pete, 723 F. App'x 381, 384 (8th Cir. 2018).  In other words, 18 U.S.C. §§ 922(g)(1) and 924 do not account for how Maestas' use of the weapon "endangered others."  U.S.S.G. § 5K2.6.  See United States v. Shedrick, 304 F. App'x 55, 60-61 (3d Cir. 2008)(concluding that U.S.S.G. § 5K2.6's upward departure can apply to a felon-in-possession offense, because 18 U.S.C. § 922(g)(1) does not take into account discharging a firearm); United States v. Lebon, 800 F. Supp. 1012, 1017 (D. Mass. 1992)(Fuste, J.)(explaining that the fact that the firearm is fully loaded may justify U.S.S.G. § 5K2.6's upward departure for a 18 U.S.C. § 922(g)(1) violation.  See also United States v. Joshua, 40 F.3d 948, 951 (8th Cir. 1994)(holding that U.S.S.G. § 5K2.6's upward departure can apply when a factor already accounted for in the "applicable offense guideline and adjustment" is "present to a degree substantially in excess of that which is ordinarily involved in the offense").  The Court, therefore, is not precluded from departing upward under U.S.S.G. § 5K2.6 for a felon-in-possession charge under 18 U.S.C. §§ 922(g)(1) and 924.

**IT IS ORDERED** that the Objection in the Defendant's Objections to the Pre-Sentence Report and Sentencing Memorandum, filed June 14, 2021 (Doc. 37), is overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred Federici
    Acting United States Attorney
Presiliano Torrez
    Assistant United States Attorney
United State Attorney's Office
Albuquerque, New Mexico

> *Attorneys for the Plaintiff*

Margaret Katze
    Federal Public Defender
Sylvia A. Baiz
    Assistant Federal Public Defender
Albuquerque, New Mexico

> *Attorney for the Defendant*